IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| QUALITY RECYCLING SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 11-2694 |
| PAGE INTERNATIONAL, INC., | ) ) | |
| Defendant. | ) ) | |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Quality Recycling Services, Inc. ("QRS") brings suit against Defendant Page International, Inc. ("Page International") to enforce an order from the Federal Maritime Commission ("FMC") that entitles QRS to $26,315.57.[1] (Compl. ¶¶ 1-3, ECF No. 1.) Page International moved for summary judgment on January 17, 2012. (See ECF No. 16; see also Mem. in Supp. of Def.'s Mot. for Summ. J., ECF No. 16-1) ("Def.'s Mem.").) QRS responded on February 3, 2012. (See ECF No. 19) (Pl.'s Resp.").) On February 16, 2012, Page International replied. (See ECF No. 23) (Def.'s Reply.").)

On February 14, 2012, QRS moved for summary judgment. (See ECF No. 21; see also Mem. of Law in Supp. of Mot. for Summ. J.,

---

[1] QRS seeks $26,315.57. The FMC awarded $22,349.00. The $3,966.57 difference represents accrued interest.

1

ECF No. 21-1) ("Pl.'s Mem.").) Page International responded on March 13, 2012. (See Def.'s Resp. in Opp. To Pl.'s Mot. for Summ. J., ECF No. 25) ("Def.'s Resp.").)

**I. Background**

"[A]ny motion for summary judgment made pursuant to Fed. R. Civ. P. 56 shall be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine dispute for trial." W.D. Tenn. Civ. R. 56.1. Page International attached a statement of undisputed material facts to its January 17 Motion. (Def.'s Statement of Undisputed Material Facts ¶ 1, ECF No. 16-6.) QRS did not respond to Page International's Statement of Undisputed Material Facts, as required by Local Rule 56.1(b). QRS also failed to attach its own statement of undisputed material facts. See W.D. Tenn. Civ. R. 56.1. Page International's Statement of Undisputed Material Facts is deemed admitted. See Hawkins v. Memphis Light Gas & Water, No. 09-2024-Ma, 2011 U.S. Dist. LEXIS 138776, at *2 n.1 (W.D. Tenn. Dec. 1, 2011); see also Akines v. Shelby Cnty. Gov't, 512 F. Supp. 2d 1138, 1147-47 (W.D. Tenn. 2007) ("Because the Plaintiffs have failed to respond as provided by the Local Rules, this Court will consider the Defendant's statement of undisputed material facts as having been admitted by the Plaintiffs."); Featherston v. Charms Co.,

No. 04-2157 Ml/P, 2005 U.S. Dist. LEXIS 44313, at *1 n.1 (W.D. Tenn. May 10, 2005).

The dispute between QRS and Page arises from two separate but related transactions for the shipment of waste paper to India. (Compl. ¶ 1; Def.'s Statement of Undisputed Material Facts ¶ 1, ECF No. 16-6.) In the first transaction (the "first transaction"), QRS sold waste paper to Well Pack ("Well Pack"), to be shipped through Savannah, Georgia. (See Compl. ¶ 2.) QRS commissioned Page International, a worldwide logistics provider, to prepare the necessary bills of lading. (See Compl.; see also Ex. A ¶ 4, ECF No. 16-2.) Delays in processing the paperwork in India caused a technical violation of the letter of credit, and Well Pack rejected the shipment. (Compl. ¶ 5.)

QRS then resold the shipment to Giant International Paper Company ("Giant International") on October 7, 2003 (the "second transaction"). (Id. ¶¶ 4-5.) QRS notified Page International that the first transaction had been cancelled and that new billing instructions would be provided. (Id. ¶ 6.) The shipped materials were already in India, and QRS paid storage fees for the waste paper through October 15, 2003. (Id.)

Page International did not forward the bills of lading for the second transaction because Giant International owed an outstanding debt on an unrelated transaction. (Id. ¶ 7.) Giant International eventually paid its outstanding debt, but Page

3

International did not forward the bills of lading until early November, 2003, after the storage contract had expired. (Id.) Giant International rejected the shipment due to additional storage charges. (Id.) The entire shipment was lost. (Id. ¶ 8.)

In September 2005, QRS filed suit against Page International in Tennessee state court. (Compl. ¶ 1; see also Def.'s Statement of Undisputed Material Facts ¶ 1.) QRS alleged that Giant International had rejected the second transaction because of excess storage fees caused by Page International's delay in forwarding the bills of lading. (Compl. ¶ 8.) After filing suit in Tennessee, QRS filed a complaint against Page International with the FMC, also seeking to recover damages from the second transaction. (Def.'s Statement of Undisputed Material Facts ¶¶ 2, 9.)

On November 26, 2008, the parties reached a settlement agreement (the "Release of Claims"), in which Page International agreed to pay QRS $7,250 in return for a full release of all claims. (Id. ¶ 3.) The Release of Claims was signed by Fred Bone ("Bone"), President of QRS. (See id. ¶ 4; see also Release of Claims, ECF No. 16-8.) The Release of Claims provides that:

> Quality Recycling, Inc., with the intention of binding itself, its heirs, executors, administrators, assigns, officers, directors and employees, releases and discharges Page International, Inc., its heirs, executors, administrators, assigns, officers,

4

> directors, and employees, from all claims, demands, actions, judgments, and executions which the undersigned ever had, or now has, or may have, or which the undersigned's heirs, executors, administrators, assigns, officers, directors and employees may have, or claim to have, against Page International, Inc., its heirs, executors, administrators, assigns, officers, directors and employees.

(Def's Statement of Undisputed Material Facts ¶ 8; see also Release of Claims.) Page International delivered a $7,250.00 settlement check. (Def.'s Statement of Undisputed Material Facts ¶ 5.) Bone endorsed the check. (Id. ¶ 6.) In accordance with the Release of Claims, the state court action was dismissed with prejudice. (See Order Dismissing Case with Prejudice, ECF No. 21-2) (the "Order.")

On April 1, 2010, the FMC awarded $22,349.00 to QRS. (See FMC Decision, ECF No. 21-3) (the "FMC Decision.") The parties executed the Release of Claims before the FMC Decision. (Def.'s Statement of Undisputed Material Facts ¶ 7.) During settlement negotiations, it was never discussed or contemplated between Page International and QRS that the settlement payment would resolve only the state court action. (Id. ¶ 7.)

**II. Jurisdiction and Choice of Law**

The Court has jurisdiction under 46 U.S.C. § 41309(a), which provides that "if a person does not comply with an order of the [FMC] for the payment of reparation, the person to whom the award was made may seek enforcement of the order in a

district court of the United States having jurisdiction over the parties." Accord Port Auth. of N.Y. & N.J. v. Maher Terminals, LLC, No. 08-2334, 2008 U.S. Dist. LEXIS 54522, at *8 (D.N.J. June 2, 2008) ("The prevailing party before the FMC may also seek the enforcement of a reparation order in a district court having jurisdiction over the parties."); see also Troy Container Line, Ltd. v. Housewares, Inc., 312 F. Supp. 2d 482, 483 (S.D.N.Y. 2004) (stating that the Shipping Act, 46 U.S.C. § 1713, revised in 46 U.S.C. § 41309(a), "grants district courts jurisdiction to enforce orders of the FMC.").

The parties' dispute focuses on the interpretation of the Release of Claims, which was part of the parties' state-court settlement. At issue is whether the Release of Claims precludes QRS's attempt to enforce the FMC decision. "The validity of waivers of federal . . . action[s] is governed by federal law." Toumany Sayon Sako v. Ohio Dep't of Admin. Servs., 278 F. App'x 514, 517 (6th Cir. 2008). Although federal law "always" governs the validity of releases of federal actions, "state law should be incorporated to provide the content of that federal law." Mardan Corp. v. C.G.C. Music, 804 F.2d 1454, 1457 (9th Cir. 1986); accord Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 152 (6th Cir. 1992). "[W]hether a settlement agreement is a valid contract between the parties is determined by reference

6

to state substantive law governing contracts generally." Nearburg, 958 F.2d at 152 (alterations omitted).

When the "primary question" is the enforceability of a settlement agreement in a federal action, courts apply the "choice of law rules of the forum state." Id. Tennessee follows the rule of lex loci contractus, which provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed, absent a contrary intent. Vantage Tech., LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (citing Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973)); see also Southeast Tex. Inns, Inc. v. Prime Hospitality Corp., 420 F.3d 666, 672 n.8 (6th Cir. 2006) (observing that "Tennessee adheres to the rule of lex loci contractus.").

The Release of Claims was executed in Shelby County, Tennessee. (Release of Claims.) It does not contain a provision adopting the law of a different state. See Vantage Tech, 17 S.W.3d at 650. Tennessee law governs the construction of the Release of Claims.

**III. Standard of Review**

Under Federal Rule of Civil Procedure 56, on motion of either party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

7

Fed. R. Civ. P. 56(a). The moving party "bears the burden of clearly and convincingly establishing the nonexistence of any genuine [dispute] of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see Fed. R. Civ. P. 56(a). The moving party satisfies this burden by demonstrating that the respondent, having had sufficient opportunities for discovery, has no evidence to support an essential element of its case. See Fed. R. Civ. P. 56(c)(2); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Mere reliance on the pleadings is insufficient opposition to a properly supported motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead,

the nonmovant must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted); see Fed. R. Civ. P. 56(c)(1). The district court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The nonmovant has the duty to identify specific evidence in the record that would be sufficient to justify a jury decision in its favor. See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111. "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**IV. Analysis**

The parties dispute whether the Release of Claims bars enforcement of the FMC decision. QRS argues that, even if its claim is barred, the affirmative defense of unilateral mistake invalidates the Release of Claims. QRS also argues that it "knew and [Page International] should have known [that QRS] had prevailed in the FMC matter when [the parties] signed the state agreement." (Pl.'s Resp. 4.)

Page International argues that QRS executed the Release of Claims for valid consideration, intending to release Page International from all existing and future claims. QRS argues that its authorized representatives "signed the [Release of Claims] with the intent and understanding that it was to end the action in state court, allowing the FMC case to go forward." (Pl.'s Mem. 4.)

**A. The Release of Claims**

The Release of Claims provides that:

> Quality Recycling, Inc., with the intention of binding itself, its heirs, executors, administrators, assigns, officers, directors and employees, releases and discharges Page International, Inc., its heirs, executors, administrators, assigns, officers, directors, and employees, from <u>all claims, demands, actions, judgments, and executions</u> which the undersigned <u>ever had, or now has, or may have</u>, or which the undersigned's heirs, executors, administrators, assigns, officers, directors and employees may have, or claim to have, against Page International, Inc., its heirs, executors, administrators, assigns, officers, directors and employees.

(Release of Claims) (emphasis added.) Elsewhere in the Release of Claims, QRS "specifically authorizes and directs its attorneys to dismiss with prejudice all claims in the [state court action], the settlement of [the] matter and consideration paid being contingent of dismissal with prejudice of that civil action." (<u>Id.</u>) Bone, the President of QRS, signed the Release of Claims, acknowledging that he understood "all its terms," and

10

"with full knowledge of its significance." (Id.) It is undisputed that Page International furnished, and that QRS accepted, consideration in contemplation of effecting the Release of Claims.

Absent fraud, duress, "or some other defense to enforceability, a contractual release of claims will be enforced in Tennessee consistent with the parties' intent as stated in the relevant agreement." Siddle v. Crants, No. 3:09-0175, 2010 U.S. Dist. LEXIS 5548, at *15-16 (M.D. Tenn. Jan. 25, 2010) (citing Bratton v. Bratton, 136 S.W.3d 595, 601 (Tenn. 2004)). Tennessee law provides "for broad enforcement" of a release's "plain terms." Id. In interpreting "a release to determine whether a particular claim has been discharged, the primary rule of construction is that the intent of the parties shall govern, and this intention is to be determined with a consideration of what was within the contemplation of the parties when the release was executed." Burks v. Belz-Wilson Props., 958 S.W.2d 773, 776 (Tenn. Ct. App. 1997) (internal quotation and citation omitted).

The scope of a release depends on how the parties' intent is expressed in the instrument. See Jackson v. Miller, 776 S.W.2d 115, 118 (Tenn. Ct. App. 1989); see also Bunch v. Lloyd, C/A No. 03A01-9708-CV-00331, 1998 Tenn. App. LEXIS 160, at *7 (Tenn. Ct. App. Feb. 27, 1998). General releases cover "all

11

claims between the parties which are in existence and within their contemplation." Miller, 776 S.W.2d at 118. Limited releases are "confined to particular matters or causes [and] to release only such claims as fairly come within the terms of the release." Id.

Page International argues that "the general language contained within [the] Release of Claims should be interpreted broadly to include all claims in existence and within the contemplation of the parties at the time it was executed." (Def.'s Mem 4.) QRS argues that the Release of Claims was limited in nature and that it "had no intent whatsoever of waiving its rights in the FMC case when the state settlement agreement was signed." (Pl.'s Mem 4.)

It is undisputed that the Release of Claims resolved all disputes between the parties. (Def.'s Statement of Undisputed Material Facts ¶ 4.) Page International offers the affidavit of Roy Page ("Page"), its President, who was personally involved in overseeing the settlement negotiations between the parties. (See Roy Page Aff. ¶ 11, ECF No. 16-7) ("Page Aff.") Page International states that it was "never contemplated between nor discussed between Page International and [QRS] that the settlement payment would only resolve the pending court claims and not the [FMC] claim as well." (Id. ¶ 12.) Although QRS argues that it did not intend to waive its rights in the FMC

12

case, it offers no evidence of its intent and elected not to challenge Page International's version of the undisputed facts.

The Release of Claims frees Page International "from <u>all claims, demands, actions, judgments, and executions</u>" that QRS "<u>ever had, or now has, or may have</u>." (Release of Claims) (emphasis added.) That language is unambiguous. QRS released Page International from all existing, past, and future claims.

It is axiomatic that courts must interpret and enforce unambiguous provisions, including those in releases, as they were drafted by the parties. See <u>Cameron Gen. Constr., Inc. v. Kingston Pike, LLC</u>, No. E2010-02291-COA-R3-CV, 2011 Tenn. App. LEXIS 683, at *11 (Tenn. Ct. App. Dec. 21, 2011); see also <u>Richland Country Club, Inc. v. CRC Equities, Inc.</u>, 832 S.W.2d 544, 557 (Tenn. Ct. App. 1991). The Release of Claims purports to release all claims QRS has against Page International. The FMC action was such a "claim." "Clearly, the unambiguous intent of [the Release of Claims] was to permanently end the prospect of litigation" between QRS and Page International. See <u>Crants</u>, 2010 U.S. Dist. LEXIS 5548, at *32-33.

QRS argues that it knew "and [Page International] should have known [that QRS] had prevailed in the FMC matter when [Fred Bone] signed the state agreement." (Pl.'s Resp. 4.) QRS offers no evidence to support its claim, and it elected not to contest Page International's undisputed facts. It is undisputed that

13

QRS executed the Release of Claims on November 26, 2008. (See Def.'s Statement of Undisputed Material Facts ¶ 4; Release of Claims.) The FMC ruling is dated April 1, 2010. Page International could not have known of an adverse decision before that decision was rendered.

The parties dispute whether QRS had the authority to release its FMC claim. Both parties rely on FMC v. S.C. State Ports Auth., 535 U.S. 743 (2002). Page International argues that QRS, as a private party, controlled the disposition of its claim. QRS claims that FMC is distinguishable because it dealt with state sovereign immunity. At issue is the extent to which FMC claims are controlled by private parties or the federal government.

QRS is correct that FMC addressed FMC orders in the context of state sovereign immunity, but it speaks broadly to a private party's rights. Id. at 764. The Court stated that a claim "filed by a private party with the FMC is plainly . . . controlled by that private party; the only duty assumed by the FMC, and hence the United States, in conjunction with a private complaint is to assess its merits in an impartial manner." Id. (emphasis added). That FMC was decided in the context of state sovereign immunity does not diminish the force of the Court's language or its application to this case. QRS controlled the prosecution of its FMC claim and was within its rights to

14

release its claim before the FMC. To conclude otherwise would ignore explicit statements of the Supreme Court. See FMC, 535 U.S. at 764.

Relying on Troy Container Line, Ltd., QRS argues that, even if the Release of Claims were valid, the Court's jurisdiction would be limited to enforcing the FMC claim; affirmative defenses need not be considered. (See Pl's. Mem. 2.) The district court in Troy Container Line, Ltd. dismissed a plaintiff's cause of action for lack of subject matter jurisdiction, reasoning that, "if plaintiff is determined to litigate this case in a federal court, it first will have to obtain a reparation order from the FMC." Troy Container Line, Ltd., 312 F. Supp. 2d at 483. No language in the opinion suggests that a party is precluded from raising affirmative defenses. Indeed, the express language of the statute provides that "the findings and order of the [FMC] are prima facie evidence of the facts stated in the findings and order." 46 U.S.C. § 41309(c). That provision does not prevent district courts from entertaining the merits, including defenses. Page International is not precluded from raising affirmative defenses.

**B. Unilateral Mistake**

The parties' intent governs the interpretation of releases. See Jackson v. Miller, 776 S.W.2d at 118. QRS contends that,

15

even if the Release of Claims was validly executed, it was mistaken about whether the Release applied to its FMC action. QRS argues that it "understood the FMC to be completely different and separate from the State Court [action]," and that "communication with the FMC advised that [QRS] could collect from a bonding company, leading the Plaintiff to believe the FMC ruling would be well beyond the scope of the [Release of Claims]." (Pl.'s Resp. 4; see also Pl.'s Mem. 5.)

In Tennessee, a unilateral mistake occurs when one of the parties "had an erroneous belief as to a material fact or basic assumption upon which the [release] was made." Cincinnati Ins. Co. v. Avery, No. 89-5536, 1990 U.S. App. LEXIS 14842, at *17 (6th Cir. Aug. 23, 1990) (internal quotations omitted) (citing Confrancesco Constr. Co. v. Superior Components, Inc., 371 S.W.2d 821, 823 (Tenn. Ct. App. 1963)); see also Holiday Hospitality Franchising, Inc. v. States Res., Inc., 232 S.W.3d 41, 51 (Tenn. Ct. App. 2006) ("The error in the instrument must have occurred because of . . . one party's mistake induced by the other party's fraud."). Where the non-mistaken party neither knew of nor contributed to the other party's mistaken belief, relief is denied. Id. Relief is granted if "one party knows or has reason to know of the other's error." Id.; see also BancorpSouth Bank v. Herter, 643 F. Supp. 2d 1041, 1054 (W.D. Tenn. 2009) ("Unilateral mistake may also justify

16

reformation where there has been inequitable conduct or a material misrepresentation."). The mistake must be demonstrated by "clear, cogent, and convincing evidence." Herter, 642 F. Supp. 2d at 1054.

QRS offers no proof to show that it mistakenly executed a general release it intended to apply to a single claim. Even if QRS did, it offers no proof that Page International knew of the alleged mistake. Nor does QRS offer proof of fraud or misrepresentation. Thus, QRS has not met its burden of providing "clear, cogent, and convincing" evidence of unilateral mistake. Herter, 642 F. Supp. 2d at 1054. Courts do not "relieve parties from contractual obligations simply because they later prove to be burdensome or unwise." Sikora v. Vanderploeg, 212 S.W.3d 277, 286 (Tenn. Ct. App. 2006).

**C. FMC Determination**

QRS asserts that the FMC considered and rejected the Release of Claims, arguing that it is therefore "immaterial" to Page International's Motion. That argument is unfounded. In its May 10, 2010 Notice Not to Review (the "Notice Not to Review"), the FMC stated that the time to review the FMC decision had expired and the decision had become administratively final. (See Notice Not to Review, ECF No. 21-3.) The Notice Not to Review does not address the Release of

Claims. Thus, the Notice Not to Review does not show that the Release of Claims is "immaterial."

**D. Res Judicata**

In response to what it perceives to be a res judicata argument raised by Page International, QRS argues that claim preclusion is inapplicable. (See Pl.'s Mem. 3; see also Pl.'s Resp. 3.) Page International does not request summary judgment on res judicata grounds. (See Def.'s Resp. 6-7) ("Defendant has not moved for summary judgment by asserting a res judicata defense."). QRS does not move for summary judgment on a theory of res judicata. The Court need not address QRS's res judicata argument.

**V. Conclusion**

For the foregoing reasons, Page International's motion for summary judgment is GRANTED and QRS's motion is DENIED.

So ordered this 3d day of July, 2012.

        s/ Samuel H. Mays, Jr.
        SAMUEL H. MAYS, JR
        UNITED STATES DISTRICT JUDGE